UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **M.A.**, *et al.* <br><br> **Plaintiffs,** <br><br> v. <br><br> **JERSEY CITY BOARD OF EDUCATION,** *et al.*, <br><br> **Defendants.** | Civ. No. 2:13-06946 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs M.A. and E.M, individually and on behalf of their autistic son M.A., seek judicial review of two administrative determinations regarding M.A.'s educational placement. In a preliminary decision, Administrative Law Judge Gail M. Cookson (the "ALJ") determined that Jersey City Board of Education (the "District") did not violate Plaintiffs' procedural rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485 (formerly the "Education for All Handicapped Children Act"), in connection with a proposed change to M.A.'s placement. In a subsequent decision, the ALJ determined that the proposed new placement would offer M.A. a free and appropriate public education ("FAPE") under IDEA.

Currently before the Court are (1) Plaintiffs' motion for summary judgment under Federal Rule of Civil Procedure 56, (2) Plaintiffs' second motion for a preliminary injunction, and (3) Plaintiffs' motion seeking leave to file a second amended complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion for summary judgment is **DENIED** and the ALJ's determinations are **AFFIRMED**. Plaintiffs' second motion for a preliminary injunction and motion for leave to file a second amended complaint are **DENIED** as moot.

I.      BACKGROUND

All of the facts herein are drawn from, and the Court will base its decision on, the administrative record.[1]

M.A. is a child diagnosed with a disease on the Autism Spectrum. He was classified as "preschool disabled" as a three-year-old. Initially, the District referred him

---

[1] As the parties agreed that this matter would be decided based on the administrative record below, the Court has not considered the Certification of Dr. Kevin J. Brothers, Ph.D.-BCBA-D, submitted by Defendant Somerset Hills Learning Institute.

to the Jersey City Regional Day School Program, but Plaintiffs disagreed with that placement and he never started there. Instead, M.A. was placed at Douglas Developmental Disabilities Center School for the 2008-2009 school year and the 2009 extended school year. Since September 2009, M.A. has been placed by the District at Somerset Hills Learning Institute ("SHLI"), a private school approved by the New Jersey Department of Education for the education of children with autism. M.A. attended SHLI during the 2009-2010, 2010-2011, and 2011-2012 school years pursuant to his Individualized Education Program ("IEP"). Plaintiffs have never consented to an in-district placement for M.A. in Jersey City.

After written notice dated April 30, 2012, and adjustment to the scheduled date to accommodate all parties, the District held an IEP Team meeting at SHLI for M.A. At that June 5, 2012 meeting, Kevin Brothers, Ph.D., the Director of SHLI, reported that M.A.'s stereotypy has been substantially reduced in school and that he had made good progress in other areas as well. Dr. Brothers concluded that M.A. no longer required the intensive level of services he was receiving at SHLI and could benefit from a less restrictive setting. He opined that M.A. had developed the skills necessary for learning in a more natural setting and that he could benefit from learning with peers. Based on this opinion, the District recommended that M.A.'s placement at SHLI be changed to an in-district special education program and that he be transitioned from SHLI to that program in September 2012. An in-district, special education, self-contained classroom for autistic children was incorporated as M.A.'s placement in the IEP proposed for the 2012-2013 school year (the "2012 IEP"). The specific building or classroom was not determined at that time.

On August 16, 2012, Plaintiffs filed a due process petition alleging that the 2012 IEP was both procedurally and substantively defective. On September 19, 2012, the District contacted Plaintiffs and offered them the opportunity to observe an in-district special education classroom as a possibility for M.A.'s placement. On September 24, 2012, the District sent petitioners a Placement Letter advising that M.A.'s placement would be changed on October 9, 2012 to an in-district classroom within the District's autism program at the Charles Trefurt School, Public School # 8 ("P.S. #8"). Plaintiffs declined the opportunity to observe the proposed classroom at P.S. #8 pending an agreement that M.A. could remain at SHLI pursuant to an IDEA "stay-put." On September 25, 2012, the District sent Plaintiffs a letter electronically laying out the transitional plans for M.A. Plaintiffs then filed an emergent application for an IDEA "stay-put."[2] As a result, M.A. remained at SHLI.

On or about October 17, 2012, the District requested and received Plaintiffs' consent to perform an early reevaluation of M.A., ahead of the spring 2013 triennial

---

[2] IDEA contains a provision that functions as an automatic preliminary injunction during the pendency of any judicial proceedings in which a child's educational placement is in dispute. *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996). This "stay-put provision" provides that ". . . during the pendency of any proceedings conducted pursuant to this section, unless [the parties] otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

2

reevaluation.  Another IEP meeting was held on October 22, 2012 and a transition plan drafted by SHLI was added to M.A.'s IEP.  Plaintiffs had received that transition plan two days before the meeting.  On October 26, 2012, M.A.'s father observed the proposed classroom at P.S. #8 – Ms. Pessoa's classroom.[3]  During November and December of 2012, the District reevaluated M.A.  The child study team ("CST") held a meeting to discuss the reevaluation assessments on February 4, 2013.  At that meeting, M.A.'s IEP was amended to include related services of speech therapy twice per week in a small group setting and occupational therapy twice per week in one individual and one small group session.

On March 4, 2013, the ALJ issued a decision finding that the District had not violated Plaintiffs procedural rights in connection with the 2012 IEP.  Then, during the summer of 2013, the ALJ held seven hearings regarding the alleged substantive violations.  At those hearings, the ALJ heard live testimony from eleven witnesses – Dr. Kevin J. Brothers, Mr. E. Dennis Machado, Ms. Mary MacEachern, Ms. Kathryn Boruta, Ms. Susan Bartolozzi, Ms. Dorothy Walsh, Ms. Helena Pessoa, Dr. Erik Mayville, M.A.'s father, and Mr. Bobby Newman.

Dr. Brothers, Executive Director of SHLI and Dennis Machado, Assistant Director of SHLI, testified on behalf of the District.  Their testimony focused on M.A.'s progress at SHLI and the appropriateness of a move to a less restrictive placement.  Dr. Brothers described SHLI as offering education to children with autism based on the science and principles of applied behavioral analysis ("ABA").  Dr. Brothers expressed his professional opinion that SHLI is no longer an appropriate placement for M.A. based on ABA data collected and his progress with his individualized program.  He testified that M.A.'s disruptive behaviors have decreased and no longer interfere with his availability for learning and social interaction.  And he stated that the lack of peer interaction is likely the cause of M.A.'s robotic communications.  He thus opined that M.A. is ready to be educated in a less restrictive environment, one offering small group instruction and the opportunity for eventual integration with typical peers.  He admitted that the failure of M.A.'s parents to cooperate with the parental training aspects of the SHLI program factored into his decision that M.A. should be terminated from SHLI.  However, he was adamant that although this failure has curtailed what M.A. could have accomplished at SHLI, M.A has still made significant progress and is ready for a transition based on objective measurements.  Regarding any future program, he stated that the individualized motivational system and the independent activity schedule for M.A. are the most important components.  He testified that VBN is compatible with both of those components and that SHLI would train M.A.'s teacher to use both during the transitional period.

Machado testified to counter the report of Plaintiffs' witness, Dr. Erik Mayville.  He had reviewed that report and disagreed with three of Dr. Mayville's findings.  First, he

---

[3] The Court notes that Ms. Pessoa's classroom would no longer be M.A.'s specific placement because his grade level has changed during the pendency of this dispute.

testified that M.A. can ask for help appropriately. Second, he stated that M.A. is transitioning from one activity to another independently. For instance, he can prepare his lunch independently – setting his utensils, filling his cup, etc. – with the supervising teacher ten to fifteen feet away. Third, Machado was of the opinion that M.A. does not require an even thinner token reward system before he can transition to a self-contained classroom. Accordingly, contrary to Dr. Mayville, Machado felt that M.A. is ready to transition to a self-contained classroom in the District.

The District also provided testimony from MacEachern, Boruta, and Bartolozzi. These witnesses corroborated Dr. Brother's testimony that M.A. was ready to transfer to a less restrictive environment. They also provided information about the proposed in-district placement. MacEachern, a Learning Disabilities Specialist and M.A.'s CST case manager, spoke about the District's autism program for elementary-age students and Ms. Pessoa's class at P.S. #8.[4] She testified that the District's elementary level autism classes follow a Verbal Behavior/Applied Behavior Analysis ("VBN") instruction methodology. Classes have no greater than a 3:1 student-to-staff ratio and there is a maximum enrollment of six students. Opportunities for inclusive experiences with general education students are available during "special periods" of physical education, art, music, and lunch, as well as assemblies and library. Speech/language therapy and occupational therapy are widely available to the students in the autistic community. Services are provided in individual, small group, and consultative delivery models as indicated by the child's needs. She also explained that she had observed both Ms. Pessoa's class and M.A. at SHLI. She concluded that M.A. should transition to the District and that the self-contained classroom at P.S. #8 would be a great match for him. Although she noted that she relied upon Dr. Brothers for the determination that M.A. should transition to a less restrictive educational environment, her observations of M.A. were consistent with that recommendation.

Boruta, a Speech-Language Specialist and member of the CST, testified that M.A. "uses language appropriately in structured settings that are practiced in his learning environment" but has "difficulty when language is used more spontaneously and with less structure." Boruta stated that proposed in-district program would benefit M.A. because it would help him generalize his language skills. She testified that VBN is a valid method of reaching children with autism and that M.A. appears to now be a child who could benefit from the VBN small group instruction being offered by the District. Bartolozzi, a school psychologist and a member of the CST, also testified on behalf of the District. Bartolozzi observed and evaluated M.A. at SHLI. She also observed the proposed classroom at P.S. #8. Based on her evaluations and observations, she testified that M.A. would be able to continue building on his skills in the District. Specifically, she believed that the self-contained classroom's individualization and level instruction, its use of behavior management principles, its low student to teacher ratio, the pace of

---

[4] The Court will consider the testimony regarding Pessoa's classroom as providing an example of the type of classroom that might be available under the 2012 IEP.

instruction, the small group learning context, and the constant focus on verbalizations would all contribute to further M.A.'s learning progress.

  Walsh, a Lead Teacher, provided additional testimony regarding the District's VBN program. As a Lead Teacher, she provides mentoring to special education and regular education teachers. She described the VBN program as based upon the research of ABA and Dr. B.F. Skinner's classification of language by its functions. The VBN program begins by pairing staff, peers, materials, and educational environments with the student's existing re-enforcers so that they become conditioned. Walsh also testified that the District's teachers who work with autism receive training and continuing guidance. On cross-examination, she testified that a Board Certified Assistant Behavior Analyst ("BCABA"), Bonnie Marini of VBN, provides twice-monthly services to the District's self-contained autism classes. Marini is supervised by two Board Certified Behavior Analysts ("BCBA"). Helene Pessoa, who would have been M.A.'s teacher had he transitioned to the District in October 2012, also provided details regarding the District's program.

  Finally, the District presented testimony from Pacifico-Batista. Pacifico-Batista is a case manager on the CST at P.S. #37, M.A.'s home school. As M.A. has aged out of the primary grades during the pendency of this lawsuit, Pacifico-Batista provided information regarding the overall District program that would now be available for him. She noted that all the self-contained autism classrooms in the District follow the same program and that all the certified special education teachers are trained in that methodology as well as others, including ABA discrete trial. She also noted that M.A. had made great strides in working independently and without the need for constant rewards and edibles since she evaluated him in 2010.

  Plaintiffs presented the testimony of Dr. Mayville, a Board Certified Behavior Analyst with Doctorate credentials. Dr. Mayville conducted an evaluation of M.A. and visited the proposed classroom at P.S. #8. Dr. Mayville testified that despite M.A.'s general competence with his current educational system, M.A. has not yet acquired the skills necessary to function in a less restrictive environment. He also had significant reservations about M.A. being placed in a self-contained classroom utilizing VBN methods and group instruction rather than ABA discrete trials. He opined that, at the very least, any self-contained classroom must engage a behavior analyst who should supervise all aspects of M.A.'s program. He felt that small group and peer social programming may be an increasingly prevalent component of his educational arrangement, but how to increase those components should be based on the data and facilitated by the supervising behavior analyst. In sum, it was his professional opinion that M.A. might benefit from learning in select small group environments and interaction with typically developing peers. However, that type of instruction should be sparing, guided by ABA-based intervention, and not come at the expense of comprehensive ABA instruction. On cross-examination, he stated that VBN is based on the science of B.F. Skinner and employs the principles of ABA. He agreed in theory that aspects of VBN

could be appropriate for M.A., if a BCBA takes charge of its implementation and progress and M.A. also receives ABA discrete trial instruction.

M.A.'s father, M.A., also testified on behalf of Plaintiffs.  He is the primary caregiver for M.A. and M.A's sister, who is also autistic.  M.A. was not optimistic about the District's ability to provide an adequate program and had litigated in the past for his daughter's current out-of-district placement.  He also expressed his belief that Dr. Brothers is making the recommendation to transfer M.A. because he is disappointed with the progress that he and his wife are making at home.[5]

On October 28, 2013, the ALJ issued a detailed and thorough decision, in which she held that the 2012 IEP offered M.A. FAPE.  On November 15, 2013, Plaintiffs filed the instant appeal.  Shortly thereafter, Plaintiffs filed a motion for a preliminary injunction, requesting that M.A. remain at SHLI pursuant to IDEA's "stay-put" provision during the pendency of the appeal.  The Court granted that motion, and therefore M.A. remains at SHLI.  Three motions are currently pending before the Court: (1) Plaintiffs' motion for summary judgment, (2) Plaintiffs' second motion for a preliminary injunction forcing SHLI to meet in good faith regarding M.A.'s IEP and to implement changes in his IEP while he remains at SHLI under the "stay-put," and (3) Plaintiffs' motion seeking leave to file a second amended complaint to add claims against SHLI.

## II.     STANDARD OF REVIEW

In IDEA cases, the Court decides motions for summary judgment based on the administrative record and any additional evidence offered by the parties.  *M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002).  Accordingly, the standard of review is different from the typical summary judgment motion.  *M.S. v. Mullica Twp. Bd. of Educ.*, 485 F. Supp. 2d 555, 566 (D.N.J. 2007).  In an IDEA case, the Court "applies a modified version of de novo review," giving "due weight to the factual findings of the ALJ," but making "its own findings by a preponderance of the evidence." *L.E. v. Ramsey Bd. of Edu.*, 435 F.3d 384, 389 (3d Cir. 2006); *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("[F]actual findings from the administrative proceedings are to be considered prima facie correct.").  The purpose of affording "due weight" to the administrative proceedings is to prevent the courts from imposing "their own notions of sound education policy." *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 757 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

Under the "due weight" standard, the Court is required "to consider – although not necessarily to accept – the administrative fact findings." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995).  If the Court departs from the ALJ's findings, it must find factual support in the record and "fully explain [ ] its reasons for departing from the state decision." *S.H.*, 336 F.3d at 270-71.  Also, if the ALJ heard live testimony and made credibility determinations, those determinations are given special weight. *Shore*

---

[5] Bobby Newman also testified for Plaintiffs.  However, his testimony concerned the appropriateness of Caldwell College Center as a placement for M.A. and is therefore irrelevant to the instant appeal.

*Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *Carlisle Area Sch.*, 62 F.3d at 529). A district court may disturb them only after finding that extrinsic evidence justifies a contrary result.[6] *Id*. The ALJ's legal determinations, however, are reviewed de novo. *See, e.g., P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

## III.  DISCUSSION

Plaintiffs challenge the ALJ's determinations that that (1) the District did not violate their procedural rights, and (2) the 2012 IEP would provide M.A. with FAPE. The Court agrees with the ALJ's well-supported determinations, and will affirm.

Plaintiff's claims stem from the central question of whether the District provided M.A. with FAPE under IDEA. A district offers a student FAPE when (1) the child's IEP is developed in compliance with the procedural requirements of IDEA, and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits." *Board of Educ. v. Rowley*, 458 U.S. 176, 206-07 (1982); *see School Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985).

### A. The District did not violate Plaintiff's procedural rights.

Plaintiffs seek review on three procedural issues: (1) whether the District violated IDEA or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 795, by not reevaluating M.A. prior to proposing a change in his placement; (2) whether the District gave Plaintiffs adequate notice of the proposed change in placement; and (3) whether the District should have convened an IFP team meeting before specifying that M.A. would be placed in Ms. Pessoa's class. The ALJ's determinations regarding these issues are legal, so the Court's review is plenary. However, the Court will give due weight to the ALJ's related fact findings.[7]

#### i.  Reevaluation claims

Plaintiffs' argue that the District failure to conduct a reevaluation prior to changing M.A.'s placement violated M.A.'s rights under IDEA and Section 504. However, nothing in IDEA requires that a child be reevaluated prior to a significant change in placement. Rather, IDEA and corresponding New Jersey law generally provide for a triennial reevaluation timeframe. 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303; N.J. Admin. Code § 6A:14-3.8. Beyond that, a reevaluation is only required if (1) the child's parents request a reevaluation, (2) the child's teacher requests a

---

[6] Plaintiff argues that the Court should not afford special weight to the ALJ's credibility determinations, because the ALJ did not hear live testimony. To the contrary, the administrative record contains transcripts of live testimony by eleven witnesses – including Dr. Brothers, Dr. Mayville, and Machado. Accordingly, the Court will give special weight to the ALJ's credibility determinations regarding those witnesses.

[7] Plaintiffs argue that the Court should not afford due weight to the ALJ's fact findings regarding these procedural issues, because the ALJ made her decision based solely on the papers. The Court rejects this argument. The rationale for granting due weight to the ALJ's fact findings has nothing to do with whether the ALJ heard live testimony. Rather, this purpose of this standard is to prevent courts from substituting "their own notions of sound education policy for those of the educational agencies they review." *See Susan N.*, 70 F.3d at 757 (quoting *Rowley*, 458 U.S. at 206).

reevaluation, or (3) the educational agency determines that education or related services needs of the child warrant a reevaluation. 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303; N.J. Admin. Code § 6A:14-3.8. And one way to comply with the reevaluation requirements of Section 504 is to comply with IDEA's reevaluation requirements. *P.N.*, 282 F. Supp. 2d at 241; *see* 34 C.F.R. § 104.35(d) ("A reevaluation procedure consistent with the Education for the Handicapped Act is one means of meeting [the reevaluation] requirement."). Accordingly, as the ALJ correctly determined, a reevaluation was not required under IDEA or Section 504.

### ii. Notice claim

Plaintiffs also argue that the 2012 IEP did not satisfy IDEA's notice provision, because it did not adequately describe the proposed "educational placement." However, Section 1415(c), which sets forth the content that must be included in a prior written notice, does not require a description of the educational placement. Rather, it requires that the notice include "a description of the action proposed." *See* 20 U.S.C. § 1415(c)(1)(A). Moreover, even assuming that Section 1415(c) requires a description of the educational placement, courts have interpreted the term "educational placement" to mean "the general environment of the overall program," and not the specific classroom or school. *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009). Here, the 2012 IEP provided that M.A. would be placed in an in-district, special education, self-contained classroom for autistic children, which is a sufficient description for IDEA notice purposes. Accordingly the ALJ correctly determined that the District provided Plaintiffs with adequate notice of the proposed change.

### iii. IEP meeting claim

Finally, Plaintiffs argue that the District should have convened an IEP team meeting prior to proposing Ms. Pessoa's classroom at P.S. #8 as the specific location of M.A.'s new placement for the 2012-2013 school year. Although IDEA requires that the "educational placement" decision be made by a group of people including the parents, as stated above, the term "educational placement" does not refer to a specific location or program. *K.L.A. v. Windham Se. Supervisory Union*, 371 Fed. App'x 151, 153-54 (2d Cir. 2010). "The [United States Department of Education's] longstanding position is that placement refers to the provision of special education and related services rather than a specific place, such as a specific classroom or specific school." 71 Fed. Reg. 46540, 46687 (Aug. 14, 2006).

An IEP team meeting, which M.A.'s father attended, was held on June 5, 2012, prior to the proposed change to M.A.'s educational placement, in compliance with IDEA. Based on that meeting, an in-district, special education, self-contained classroom for autistic children was incorporated as M.A.'s placement for the 2012-2013 school year. No additional meeting was required under IDEA prior to the District's proposal that the specific location of M.A.'s placement would be at PS #8 in Ms. Pessoa's classroom.

Furthermore, the Court finds that even if any of the foregoing amounted to a procedural violation of IDEA, that violation is not actionable. A procedural violation is actionable under IDEA only if it results in a loss of educational opportunity for the student, seriously deprives the parents of their participation rights, or causes a deprivation of educational benefits. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010) (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007) (second citations omitted). In this case, M.A.'s placement never actually changed. To this day he remains at SHLI under an IDEA "stay-put." Accordingly, no loss of educational opportunity or deprivation of educational benefits has occurred. Additionally, the preponderance of the evidence indicates that Plaintiffs played a "significant role" in crafting M.A.'s IEP. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The District convened an IEP team meeting on notice to the Plaintiffs and changed the date of that meeting to accommodate their request. The proposed IEP specified that M.A. would be placed in an in-district, special education, self-contained classroom for autistic children. Plaintiffs later received notice that M.A. would be placed in a classroom at P.S. #8. And Plaintiffs were afforded the opportunity to observe, and eventually did observe, a proposed classroom. Under these circumstances there was no serious deprivation of Plaintiffs' participation rights. The Court thus affirms each of the ALJ's procedural determinations.

### B. The 2012 IEP will provide M.A. with FAPE.

The question that the ALJ considered, and the question for the Court on appeal, is whether the 2012 IEP offers M.A. FAPE.[8] The ALJ held that the 2012 IEP, which contemplates an in-district, self-contained, age-appropriate class for autistic children based upon the VBN method of ABA instruction as M.A.'s placement, constitutes FAPE. The Court finds that a preponderance of the evidence supports the ALJ's holding and affirms.

All states receiving federal education funding under the IDEA must comply with federal requirements designed to provide FAPE for all disabled children. *See* 20 U.S.C. § 1412(1). States provide FAPE through an individualized education program ("IEP"). *See* 20 U.S.C. 1414(d). A FAPE is an education "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188-89.

The FAPE promised to students in IDEA is not a perfect or ideal education. The purpose of IDEA was to "open the door of public education to handicapped children on appropriate terms" more than it was to "guarantee any particular level of education once inside." *Rowley*, 458 U.S. at 192; *see also Carlisle Area Sch.*, 62 F.3d at 534 (defining

---

[8] Plaintiff argues that the Court should focus on whether Pessoa's classroom, which was proposed as M.A.'s specific placement in September 2012, offers FAPE. However, focusing this appeal on Ms. Pessoa's classroom would make little sense, given that M.A. has now aged out of that specific classroom. *See R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 187 (2d Cir. 2012) cert. denied, 133 S. Ct. 2802 (2013) (stating that when evaluating the IEP "the appropriate inquiry is into the nature of the program actually offered in the written plan" and foreclosing reliance "on evidence that a child would have had a specific teacher or aid").

the duty of schools under IDEA as to provide a "floor of opportunity," not to provide "optimal" levels of service); *K.C. ex rel. her Parents v. Nazareth Area Sch. Dist.*, 806 F. Supp. 2d 806, 813 (E.D. Pa. 2011) (explaining that FAPE is not a guarantee of the "best possible" or maximal education). To provide FAPE, the IEP must be "reasonably calculated" to enable the child to receive "meaningful educational benefits" in light of the child's "intellectual potential." *Polk v. Cent Susquehanna Interm. Unit 16*, 853 F.2d 171, 181 (3d Cir.1988). The school has the burden of showing that the IEP constitutes FAPE. *See Oberti v. Board of Educ. of Borough of Clementon School Dist.*, 995 F.2d 1204, 1219 (3d Cir. 1993). When determining whether a proposed IEP is reasonably calculated to enable a child to receive educational benefits, a court must determine the appropriateness of an IEP as of the time it was made. *D.S.*, 602 F.3d at 565.

IDEA also states a strong preference for "mainstreaming," requiring education in the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A). The Third Circuit has interpreted this requirement as "mandating education 'in the least restrictive environment that will provide [the student] with a meaningful educational benefit.'" *S.H.*, 336 F.3d at 265 (quoting *T.R. v. Kingwood Twp. Bd. Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)). "The least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch.*, 62 F.3d at 535.

The Court, which has independently reviewed the administrative record, finds by the preponderance of the evidence that the 2012 IEP will provide M.A. with meaningful educational benefits. *See Oberti*, 995 F.2d at 1219 (noting that "the district court must independently review the evidence adduced at the administrative proceedings"). Further, the 2012 IEP will provide him with meaningful educational benefits in the least restrictive environment, where he will have the opportunity to interact with both disabled and typical peers.

The ALJ's determination that the 2012 IEP constituted FAPE hinged largely on a credibility determination. Dr. Brothers and Machado both opined that M.A. has made substantial progress and could benefit from a less restrictive setting where he can work with peers. On the other hand, Dr. Mayville opined that M.A. was not ready for a transition. The ALJ found that the observations, opinions, and recommendations of Dr. Brothers and Machado were entitled to greater weight than those of Dr. Mayville, because they had each worked with M.A. for several years and were therefore more reliable sources regarding his progress. In doing so, the ALJ considered the tension between Dr. Brothers and Machado, and M.A.'s parents. Plaintiffs have not produced, and the Court has not uncovered, any extrinsic evidence justifying a departure from this credibility determination. Accordingly, the Court affords her credibility determination special weight. *See Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d at 199. Furthermore, as the ALJ noted, even Dr. Mayville did not preclude a self-contained, in-district classroom as a means of providing an appropriate education to M.A. Dr. Mayville also agreed that VBN, while not his preference for an intense autism program, is based on the

science of ABA and Dr. Skinner.  Finally, the testimony of MacEachern, Boruta, and Bartolozzi supported Dr. Brother's and Machado's opinions that M.A. was ready to learn in a less restrictive environment.

Moreover, the record evidence, including the testimony of MacEachern, Boruta, Bartolozzi, Walsh, Pessoa, and Pacifico-Batista, indicates that an in-district, special education, self-contained classroom for autistic children is an appropriate less restrictive environment.  The District's autism program is based upon VBN, which is based on the science of B.F. Skinner and the principles of ABA.  It is compatible with the teacher's use of M.A.'s individualized motivational system and independent activity schedule developed for him by SHLI.  The program is supervised by Lead Teachers and receives support from VBN and its staff of BCBAs and BCABAs.  Furthermore, the program will allow M.A. to work with peers, which will help him to generalize his language skills and speak more naturally.  That Plaintiffs may prefer a different methodology in educating M.A. is irrelevant.  *See W.H. v. Schuykill Valley Sch. Dist.*, 954 F. Supp. 2d 315, 324 (E.D. Pa. 2013) (citing *Rowley*, 458 U.S. at 199) (stating that "parents do not have a right to compel a school district to provide a specific program or employ a specific methodology in educating a student").  The inquiry here is not whether the District's proposed placement will provide the optimal level of services, but whether the proposed placement will confer some meaningful educational benefit upon the child.  *T.R.*, 205 F.3d at 577.  And the preponderance of the evidence indicates that M.A. will be able to obtain meaningful educational benefits through the District's autism program.

Finally, the preponderance of the evidence shows that the District's autism program is the least restrictive environment that will afford M.A. a meaningful educational benefit.  The District's program will allow M.A. to interact with other disabled peers.  It will also afford him the opportunity to interact with typically developing peers once he is ready.  Accordingly, transitioning M.A. to the District's program is consistent with IDEA's preference for mainstreaming.  Therefore, the Court affirms the ALJ's determination that the 2012 IEP constitutes FAPE.

As the Court has determined that that the 2012 IEP constitutes FAPE, M.A. must be transitioned from SHLI to an in-district placement.  Accordingly, Plaintiff's second motion for a preliminary injunction and motion seeking leave to file a second amended complaint will each be denied as moot.

### IV.   CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is **DENIED**, the ALJ's decisions dated March 4, 2013 and October 28, 2013 are **AFFIRMED**, and the Complaint is **DISMISSED WITH PREJUDICE**.  Plaintiffs' second motion for a preliminary injunction and motion for leave to file a second amended complaint are each **DENIED** as moot.  An appropriate order follows.

                                        /s/ William J. Martini
                                **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 18, 2014**